UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


PETER CORBETT,

        Plaintiff,

v.                                  Civil Action No. 2:10-00102


RONALD DUERRING, and
THE KANAWHA COUNTY BOARD OF EDUCATION,

        Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>


        Pending is defendants' motion to dismiss, filed February 9, 2010.


I.  Statement of Facts


        Plaintiff is a resident of Kanawha County.  (Compl. ¶ 1).  Defendant Ronald Duerring is a resident of Kanawha County and the Superintendent of the Kanawha County Board of Education.  (<u>Id.</u> at 2).  Defendant Kanawha County Board of Education ("the Board") is a political subdivision of the State of West Virginia with its principal office in Charleston.  (<u>Id.</u> at 3).

In August 1989, plaintiff was hired as a teacher and coach at George Washington High School in Kanawha County.  (Id. at 4).  He was promoted to Vice Principal in September 1998.  (Id.).  Duerring was hired as the Superintendent of the Board in April 1999.  (Id. at 5).  The allegations that follow are taken from the complaint and, for purposes of the motion to dismiss, are regarded as true.

As a vice principal, plaintiff's duties included the supervision and discipline of students.  (Id. at 6).  In October 1999, Duerring summoned plaintiff into his office to discuss certain disciplinary actions taken by plaintiff while acting as vice principal.  (Id. at 7).  During the discussion, Duerring emphasized that plaintiff had to learn to "make deals" with students who were the children of persons of influence in order to prevent the parents from complaining to Duerring.  (Id. at 8).  Plaintiff indicated to Duerring that he would not "make deals" or give special treatment to any students based on the influence of their parents.  (Id. at 9).  In response, Duerring advised plaintiff that his failure to do so would interfere with his ability to receive promotions in the future.  (Id.).

2

After this meeting, plaintiff asserts that Duerring engaged in a pattern of conduct whereby he sought to retaliate against plaintiff for his refusal to "make deals" with certain students. (Id. at 10). Plaintiff alleges that he was repeatedly overlooked for various positions in the Kanawha County school system as a result of Duerring's efforts to retaliate against him. (Id. at 11). Additionally, plaintiff claims that Duerring unfairly disciplined him for a variety of actions undertaken by him, including statements that he made. (Id. at 12). Plaintiff contends that these statements regarded matters of public concern and, thus, are protected speech under the West Virginia and United States Constitutions. (Id.).

Plaintiff further asserts that Duerring engaged in a course of conduct with the assistance of others whereby he sought to have the Board terminate plaintiff's employment. (Id. at 13). As further retaliation against plaintiff for his failure to "make deals" with certain students, Duerring recommended to the Board that plaintiff's employment be terminated. (Id. at 14). As a result, plaintiff was forced to retire from his position as vice principal in an effort to preserve all rights and benefits due him. (Id. at 15). Plaintiff contends that his forced retirement constitutes constructive discharge. (Id.). Following plaintiff's retirement, the date of which is not stated, the

3

Board adopted Duerring's recommendation and voted to terminate plaintiff's employment.  (Id. at 16).  By letter dated September 9, 2008, Duerring advised plaintiff that the Board had terminated his employment.  (Id. at 17).

Plaintiff filed this action in the Circuit Court of Kanawha County on December 23, 2009.  Plaintiff's complaint alleges three counts:  Count I - Wrongful Termination; Count II - Negligent Supervision; and Count III - 42 U.S.C. § 1983.  On January 29, 2010, defendants removed this action on the basis of federal question jurisdiction under 28 U.S.C. § 1331.

As to Count I, plaintiff contends that the fair and equal treatment of students in public schools is a substantial public policy of the State of West Virginia, as is the fundamental right of free speech and expression regarding matters of public concern.  Plaintiff contends that Duerring "negligently, wantonly, recklessly, willfully and/or maliciously terminated plaintiff's employment in retaliation for his exercise of his constitutional right to free speech and expression and his refusal to "make deals" effecting [sic] the unequal treatment of students in Kanawha County Schools." (Compl. ¶ 21).  Plaintiff further contends that the Board ratified Duerring's actions and that the defendants' actions combined to effect the wrongful

4

termination of plaintiff's employment in violation of substantial public policy principles of the State of West Virginia. As a result of the defendants' actions, plaintiff claims to have suffered lost wages, emotional distress, and humiliation.

In Count II, plaintiff alleges negligent supervision against the Board. Plaintiff contends that the Board was under a duty to supervise its employees, including Duerring. As a result of the Board's failure to properly supervise Duerring and others, plaintiff claims he has suffered lost wages, emotional distress, and humiliation.

In Count III, plaintiff asserts that defendants violated his rights under 42 U.S.C. § 1983 in that plaintiff's exercise of his First Amendment rights was a substantial or motivating factor in the defendants' decision to terminate plaintiff. The defendants' retaliation against plaintiff for the exercise of his First Amendment rights is said to have resulted in lost wages, emotional distress, and humiliation.

Plaintiff seeks judgment against the defendants "for all lost wages and other special damages allowed by law; all emotional distress, humiliation, and other general damages allowed by law; all punitive damages allowed by law; attorneys fees and costs to the extent permitted by law; and all such other

5

and further relief as the court deems just and proper."   (Compl.
¶ 32).

    As noted, defendants have moved to dismiss plaintiff's
claims, for which defendants offer three rationales.   First,
defendants assert that plaintiff's claims are barred by the
statute of limitations and should be dismissed.   Second,
defendants contend that plaintiff's section 1983 claim fails to
state a claim upon which relief can be granted inasmuch as
plaintiff has not pled sufficient factual allegations.   Third,
defendants assert that plaintiff has failed to exhaust his
administrative remedies prior to filing this action and, thus,
this court lacks subject matter jurisdiction over Counts I and
II.


## II.  Governing Standard


    Federal Rule of Civil Procedure 8(a)(2) requires that a
pleader provide "a short and plain statement of the claim showing
. . . entitle[ment] to relief."   Fed. R. Civ. P. 8(a)(2);
Erickson v. Pardus, 551 U.S. 89, 93 (2007).   Rule 12(b)(6)
correspondingly permits a defendant to challenge a complaint when

it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Twombly</u>, 550 U.S. at 562-63)); <u>see</u> <u>also Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007).  Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ."  <u>Twombly</u>, 550 U.S. at 555.  It is now settled that "a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u>; <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)(noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed -me accusation."); <u>Giarratano v. Johnson</u>, 521 F.3d 298, 304 (4th Cir. 2008).  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570); <u>see also</u> <u>Monroe v. City of Charlottesville</u>, 579 F.3d 380, 386 (4th Cir. 2009).

As noted in <u>Iqbal</u>, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a district court to "'accept as true all of the factual allegations contained in the complaint . . . .'" <u>Erickson</u>, 551 U.S. at 94 (quoting <u>Twombly</u>, 550 U.S. at 555); <u>see also</u> <u>South Carolina Dept.</u> <u>of Health and Environmental Control v. Commerce and Industry Ins.</u> <u>Co.</u>, 372 F.3d 245, 255 (4th Cir. 2004) (quoting <u>Franks v. Ross</u>, 313 F.3d 184, 192 (4th Cir. 2002)).  The court is additionally required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." <u>Edwards v. City of</u> <u>Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

### III.

Inasmuch as defendants' third argument alleges that the court lacks subject matter jurisdiction over Counts I and II, the court addresses this issue first.  With regard to these claims, defendants assert that plaintiff's failure to exhaust his administrative remedies, as provided under the West Virginia Public Employees Grievance Procedure ("WVPEGP"), W. Va. Code § 6C-2-1 <u>et seq.</u>, should result in dismissal for lack of subject matter jurisdiction.

8

The WVPEGP provides a three-level grievance procedure for employees of county boards of education.  W. Va. Code § 6C-2-4.  "An employee may proceed directly to level three . . . when the grievant has been discharged."  Id. at § 6C-2-4(a)(4).  In level three, the grievant files a written appeal with the employer and the grievance board requesting a level three hearing.  Id. at § 6C-2-4(c)(1).  An administrative law judge schedules and conducts level three hearings while according all parties procedural and substantive due process.  Id. at § 6C-2-4(a)(2).  Within thirty days of the hearing, the administrative law judge renders a written decision setting forth findings of fact and conclusions of law on the issues submitted.  Id. at § 6C-2-4(a)(4).  Should the administrative law judge rule in the grievant's favor, the WVPEGP authorizes an award of back pay for one year prior to the filing of a grievance to the employee.[1]  W. Va. Code 6C-2-3.  Parties may appeal the administrative law judge's decision in the circuit court of Kanawha County on the grounds that the decision:

(1) Is contrary to law or a lawfully adopted rule or written policy of the employer;

---

[1] Grievants may receive up to eighteen months of back pay if they can show by a preponderance of the evidence that the employer acted in bad faith in concealing the facts giving rise to the claim for back pay.  W. Va. Code § 6C-2-3.

(2) Exceeds the administrative law judge's statutory authority;

(3) Is the result of fraud or deceit;

(4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code. § 6C-2-5(b)(1)-(5).

In West Virginia, "'[t]he general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act.'" Syl. Pt. 1, <u>Kincell v. Superintendent of Marion County Schools</u>, 499 S.E.2d 862, 864 (W. Va. 1997)(per curiam); <u>Daurelle v. Traders Fed. Savings & Loan Assoc.</u>, 104 S.E.2d 320, 326 (W. Va. 1958).  Based on this general rule, defendants contend that plaintiff's claims in Counts I and II should be dismissed for his failure to exhaust his administrative remedies through the three-level statutory grievance procedure created for the employees of county boards of education.

Plaintiff does not dispute the availability of an administrative process or the existence of the general rule

10

requiring exhaustion of administrative remedies. Rather,
plaintiff relies on a limited exception to the general rule.
West Virginia law does not require exhaustion of administrative
remedies in instances "where resort to the available
administrative procedures would be an exercise in futility."
Syl. Pt. 2, Kincell, 499 S.E.2d at 864; Syl. Pt. 2, Beine v. Bd.
of Educ. of Cabell County, 383 S.E.2d 851, 852 (W. Va. 1989);
Syl. Pt. 1, State ex rel. Bd. of Educ. of Kanawha Count v. Casey,
349 S.E.2d 436, 437 (W. Va. 1986). Plaintiff's sole basis for
finding the administrative proceedings to be futile in this
instance relates to his inability to recover certain damages.

A plaintiff may not avoid the exhaustion of
administrative remedies requirement based solely on the nature of
the damages available. Under West Virginia law,

> [t]he rule of exhausting administrative remedies before
> actions in courts are instituted is applicable, even
> though the administrative agency cannot award damages,
> if the matter is within the jurisdiction of
> the agency. In any event, damages can always be
> obtained in the courts after the administrative procedures
> have been followed, if warranted.

Bank of Wheeling v. Morris Plan Bank & Trust Co., 183 S.E.2d 692,
695 (W. Va. 1971); see also State ex rel. Smith v. Thornsbury,
588 S.E.2d 217, 222 (W. Va. 2003)("In proper situations, damages
can be sought in the courts after the administrative proceedings
have reached their conclusion.")(emphasis in original). Here,

the administrative proceedings can address and consider both the propriety of his termination and limited back pay.  Indeed, those same proceedings may ultimately result in the agreed resolution of the dispute between the parties.  Consequently, if plaintiff seeks to recover relief beyond that available under the WVPEGP, he must first exhaust his administrative remedies.

This conclusion is supported by our court of appeals' decision in Sanders v. McCrady.  537 F.2d 1199 (4th Cir. 1976).  In Sanders, the plaintiff was found guilty of cheating by the faculty board of a military school.  Id. at 1200.  Rather than challenge the decision of the board through military administrative procedures, plaintiff filed a civil action seeking reinstatement, expungement of the cheating episode from his records, an injunction against further proceedings unless accorded due process of law, back pay, damages, costs, and attorney's fees.  Id.  Inasmuch as the board lacked authority to award damages and attorney's fees, he asserted that the inadequacy of the available administrative remedies eliminated the exhaustion requirement.  However, the court concluded that this was an insufficient reason to depart from the general rule requiring exhaustion.  Acknowledging that the adequacy of an administrative remedy is one of the factors courts should consider when deciding whether the exhaustion rule should be

12

applied, the court emphasized that the board's inability to grant full relief by awarding damages and attorney's fees is not a controlling factor in the determination.  <u>Id.</u> at 1201.  The only consequence of requiring plaintiff to exhaust his administrative remedies would be the postponement of his opportunity to obtain certain damages and fees.  <u>Id.</u>  Overall, the court found that "[c]onsiderations of efficiency and agency expertise [underlying] the exhaustion requirement . . . outweigh the inconvenience to [plaintiff] caused by the board's limited powers."  <u>Id.</u>; <u>see also</u> <u>Guerra v. Scruggs</u>, 942 F.2d 270 (4th Cir. 1991)(holding that the postponement of the plaintiff's ability to obtain damages is outweighed by the consideration of efficiency and agency expertise in requiring exhaustion in accord with <u>Sanders</u>).

As in <u>Sanders</u>, requiring plaintiff to exhaust his remedies here results only in the postponing of his ability to seek certain monetary remedies.  This is simply not enough to avoid the general rule requiring exhaustion.  As noted in <u>Sanders</u>, the plaintiff's interest in immediate recovery of all available damages is outweighed by the well-recognized policy considerations underlying the general rule.

> "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have the opportunity to correct its own errors, to afford the parties and the courts the

13

benefit of its experience and expertise, and to compile a record which is adequate for judicial review."

Bowen v. City of New York, 476 U.S. 467, 484 (1986) (quoting Weinberger v. Salfi, 422 U.S. 749, 765 (1975)). See also McKart v. United States, 395 U.S. 185, 194 (1969); Cavalier Telephone, LLC v. Virginia Elec. and Power Co., 303 F.3d 316, 322-23 (4th Cir. 2002); GM Heavy Truck Corp. v. U.S. Dept. of Labor, 118 F.3d 205, 208-209 (4th Cir. 1997). Furthermore, the exhaustion requirement may "filter out some frivolous claims and foster better-prepared litigation once a dispute [does] move to the courtroom." Booth v. Churner, 532 U.S. 731, 736 (2001). In some instances, the "very act of being heard and prompting administrative change can mollify passions even when nothing ends up in the pocket." Id. at 737. These policy considerations exist regardless of whether plaintiff may attain the full extent of remedies he seeks through the administrative process.

Nevertheless, plaintiff contends that Casey and Beine provide support for finding the exhaustion of administrative remedies to be futile in this instance. In both Casey and Beine, the West Virginia Supreme Court of Appeals applied the futility exception to claims brought by employees of county boards of education.

14

In Casey, the county board of education voted to place Gillispie, a secondary principal, on administrative transfer due to the closure of his school.  349 S.E.2d at 437.  Following the vote, Gillispie filed a petition for writ of mandamus in the Circuit Court of Kanawha County, seeking transfer to the secondary principalship occupied by the least senior principal as required by law.  Id.  The board of education asserted that Gillispie had failed to exhaust his administrative remedies prior to filing suit.  Id. at 438.  Upon receiving notice of a proposed transfer, West Virginia law authorized employees of county boards of education to demand a hearing before the board of education at which the reasons for the proposed transfer must be shown.  Id.  Noting the general rule requiring exhaustion of administrative remedies, the West Virginia Supreme Court of Appeals found the futility exception applied to Gillispie's claims.  Gillispie "objected, not to the proposed transfer, which was inevitable, but rather to the manner in which it was being executed."  Id. at 438-39.  Accordingly, the court concluded that recourse to the statutory procedure would have been a futile gesture inasmuch as the administrative procedure "would not have afforded an opportunity for Gillispie to secure the relief desired."  Id. at 439.

15

In Beine, the Cabell County Board of Education discharged Beine from his position as a junior high counselor. 383 S.E.2d at 852. In violation of the West Virginia statutes governing his employment, the board failed to serve Beine with written notice providing the cause for his termination nor was he afforded the opportunity to address the board regarding his termination prior to their ultimate decision. Id. Beine brought suit in Cabell County Circuit Court alleging breach of contract and denial of due process. Id. at 852-53. The Board sought dismissal for failure to exhaust administrative remedies. Id. at 856. Ultimately, the West Virginia Supreme Court of Appeals determined that exhaustion would have been an exercise in futility, stating:

> Since the Board did not extend to Beine his rights under the law governing education employees, they were not in a good position to later contend he should have made use of that procedure in complaining. Clearly, Beine's filing of this civil action instead of an employee grievance was appropriate under these circumstances.

Id.

In an attempt to liken his situation to those of the plaintiffs in Casey and Beine, plaintiff asserts that resorting to the administrative process would be futile such that he is not required to exhaust his administrative remedies prior to bringing this action. He contends that the administrative remedies

16

provided under the WVPEGP are incapable of fully resolving his
claims or providing him with the relief that he seeks.  That is,
he does not seek reinstatement or any other form of equitable
relief available to him in the grievance process, but the damages
he does seek are unavailable, such as punitive damages, emotional
distress damages, and attorneys' fees.

Neither Casey nor Beine support application of the
futility exception to plaintiff's claims here.  The WVPEGP is
designed to address the claims of employees alleging wrongful
termination.  Similarly, the administrative procedure provided to
the plaintiff in Casey was designed to address claims of wrongful
transfer.  However, exhaustion of administrative remedies was
futile in Casey because the plaintiff did not contest the
transfer itself, but, rather, sought to mandate a particular
method for executing the transfer.  Inasmuch as his claims were
not within the purview of the administrative proceedings provided
by the statute, the court concluded that exhaustion of
administrative remedies would have been futile.  Conversely,
plaintiff's claims in Counts I and II allege wrongful termination
claims intended to be first addressed through the WVPEGP.

The court also finds Beine to be inapplicable.  The
court there found that the exhaustion of administrative

17

proceedings would have been futile inasmuch as the defendants had failed to extend to Beine his right to notice and hearing, in accordance with the law governing education employees, before terminating him.  In contrast, the plaintiff here has not alleged that the board has not treated him as an educational employee within the scope of the WVPEGP.  Unlike Beine, there are no allegations that the defendants failed to provide him with his procedural rights as an educational employee; he simply chose not to exercise those rights.  In sum, neither of the rationales for applying the futility exception in Casey or Beine is applicable to the plaintiff's claims here.

Alternatively, plaintiff contends that his negligent supervision claim in Count II is not subject to the exhaustion of administrative remedies requirement inasmuch as it is not a "grievance" as defined by the WVPEGP.  Plaintiff asserts that the statutory definition of a grievance does not encompass the common law claim of negligent supervision or any other form of negligence.

Under the WVPEGP, a grievance is any claim by an employee alleging a violation, a misapplication or a misinterpretation of the statutes, policies, rules or written agreements applicable to the employee.  W. Va. Code §§ 6C-2-

2(i)(1).  Claims qualifying as grievances under the WVPEGP include the following:

> (i) Any violation, misapplication or misinterpretation regarding compensation, hours, terms and conditions of employment, employment status or discrimination;
>
> (ii) Any discriminatory or otherwise aggrieved application of unwritten policies or practices of his or her employer;
>
> (iii) Any specifically identified incident of harassment;
>
> (iv) Any specifically identified incident of favoritism; or
>
> (v) Any action, policy or practice constituting a substantial detriment to or interference with the effective job performance of the employee or the health and safety of the employee.

W. Va. Code §§ 6C-2-2(i)(1)(i-v).  Plaintiff maintains that common law claims of negligent supervision are not included under this provision.  However, the court does not find the language in the WVPEGP to be so limited.  Plaintiff's negligent supervision claim alleges that the Board failed to properly supervise Duerring, resulting in damages to the plaintiff following his termination.  In other words, plaintiff alleges an "action, policy or practice" of the Board "constituting a substantial detriment to or interference with the effective job performance of the employee."  Id. § 6C-2-2(i)(1)(v).  Inasmuch as the Board's alleged practice of negligently supervising its employees is claimed to have resulted in substantial detriment to

19

plaintiff, the WVPEGP expressly includes his claims within its definition of a grievance.

Based on the foregoing, defendants' motion to dismiss Counts I and II for failure to exhaust administrative remedies is granted.

IV.

Defendants further contend that all of plaintiff's claims are barred by the statute of limitations.  Both parties agree that the applicable statute of limitations is two years and that the statute begins to run upon infliction of the injury. (Mot. to Dismiss 5; Pl.'s Resp. 2).  See W. Va. Code § 55-2-12; Stanley v. Sewell Coal Co., 285 S.E.2d 679, 683 (W. Va. 1981). Defendants contend that the two years began to run in October 1999 when plaintiff met with Duerring initially.  In contrast, plaintiff asserts that the statute began to run at the time of his termination in September 2008.  Inasmuch as Counts I and II have been dismissed, the court limits the statute of limitations analysis to Count III.  Count III alleges that the defendants violated plaintiff's rights under section 1983 "[b]y terminating [plaintiff's] employment in retaliation for his exercise of his First Amendment rights."  (Compl. ¶ 31).

Defendants contend that plaintiff became aware of Duerring's alleged retaliatory acts when Duerring informed plaintiff that he would be passed over for promotions if he did not "make deals" with certain students in October 1999, which is asserted by defendants to be the beginning date of plaintiff's injuries.  However, as the defendants acknowledge, "the real crux of [plaintiff's] Complaint is constructive or wrongful discharge, and not the failure to promote." (Defs.' Reply 6).  Indeed, plaintiff has not brought any claims to recover for Duerring's actions during their initial meeting or for the resulting missed promotions.

Count III specifically alleges a section 1983 violation based on the defendants' retaliatory termination of plaintiff. As plaintiff explains in his response brief, the conversation in which Duerring instructed him to "make deals" with some students is not the injury suffered by him; rather, plaintiff offers the conversation as evidence of the defendants' wrongful motive for their subsequent treatment of him.  (Resp.  2).  There is no indication that plaintiff knew or should have known that he would be terminated based on his refusal to "make deals" with children of influential parents prior to his actual termination in September 2008.  Thus, plaintiff's injury occurred upon his

termination which is when the statute of limitations began to run.

Plaintiff's section 1983 claim in Count III appears to be based solely upon his alleged wrongful termination by the defendants in retaliation for the exercise of his First Amendment rights and plaintiff does not suggest otherwise in his response to the defendants' motion.  However, assuming <u>arguendo</u> that plaintiff has made claims relating to other actions by the defendants, such as passing him over for promotions or for unfairly disciplining him in the years prior to his termination, the existence of any such claims that are barred by the statute has no effect whatever upon the statute of limitations relative to plaintiff's claims based upon the wrongful termination.

> When, in the course of employment, a person receives a number of similar, but separate, injuries, each injury gives rise to a separate and distinct cause of action. Further, the statute of limitations for each cause of action begins to run from the date of the injury giving rise thereto, without regard to any previous injury or injuries.

<u>DeRocchis v. Matlack, Inc.</u>, 460 S.E.2d 663, 669 (W. Va. 1995). Thus, plaintiff having filed his claim within two years of his termination, defendants' motion to dismiss plaintiff's Count III

22

section 1983 claim for retaliatory termination as barred by the statute of limitations is denied.[2]

V.

In Count III, plaintiff alleges that the exercise of his First Amendment rights was a substantial or motivating factor in the defendants' decision to terminate him.  By terminating his employment in retaliation for the exercise of his First Amendment rights, he claims that the defendants violated rights that may be vindicated under section 1983.  Within the statement of facts, plaintiff alleges that:

> As a further part of Defendant Duerring's efforts to retaliate against Plaintiff, Defendant Duerring unfairly disciplined Plaintiff for a variety of actions undertaken by Plaintiff, including but not limited to actions and statements made by Plaintiff regarding matters of public concern and thus protected under the West Virginia and United States Constitutions.

(Compl. ¶ 12).  Defendants seek dismissal of plaintiff's section 1983 claim for failure to state a claim upon which relief may be granted, asserting that plaintiff has not alleged facts sufficient to support his claim for relief.

---

[2] Inasmuch as all of the plaintiff's claims in this action are based upon wrongful termination, this same conclusion would presumably apply to Counts I and II.

In order to prevail on his First Amendment retaliation claim, plaintiff must establish:

> (1) that [he] engaged in protected expression regarding a matter of public concern; (2) that [his] interest in First Amendment expression outweighs [his] employer's interest in efficient operation of the workplace; (3) that [he] was deprived of some valuable benefit; and (4) that a causal relationship exists between [his] protected expression on matters of public concern and the loss of the benefit.

Peters v. Jenney, 327 F.3d 307, 322-23 (4th Cir. 2003) (citing Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 351-52 (4th Cir. 2000); Huang v. Board of Governors of the Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48 (1983); Goldstein, 218 F.3d at 352. When performing this assessment, it is necessary for courts to examine "the statements in issue and the circumstances under which they are made to see whether or not they . . . are of a character which the principles of the First Amendment, as adopted by the Due Process Clause of the Fourteenth Amendment, protect." Id. at 148 n. 10 (quoting Pennekamp v. Florida, 328 U.S. 331, 335 (1946)(footnote omitted)).

24

In his response brief, plaintiff contends that Count III should survive the defendants' motion to dismiss inasmuch as he has alleged retaliation against plaintiff for the exercise of his First Amendment rights sufficient to put the defendants "on notice of the nature of the claims against them."  (Resp. 3). Under the Twombly/Iqbal standard, as noted above, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  In his complaint, plaintiff merely alleges that the defendants retaliated against him by disciplining him for statements he made regarding matters of public concern.  He does not provide any indication as to the content, form, or context of his statements. When evaluating the statements as to content, form, and context, courts may consider not only content but also the method by which the speech is conveyed and the time at which the statements were made in its determination of whether the speech addressed a matter of public concern.  Connick, 461 U.S. at 148; Goldstein, 218 F.3d at 353-54.

In order to satisfy the first element of a First Amendment retaliation claim, plaintiff must show that he engaged in protected expression regarding a matter of public concern. However, plaintiff has not provided any fact-based allegations

which would allow the court to determine whether the speech was protected based on its content, form, or context.  There is no indication as to the subject matter, the method of delivery, or the timing of his statements.  See Goldstein, 218 F.3d at 352-354.  He has simply pled conclusionally that he made protected statements regarding matters of public concern.  This is insufficient to satisfy the first element of a First Amendment retaliation claim and impacts his ability to establish the remaining elements.  Id. at 352 (noting that "application of the remaining elements mandates a closer examination of the speech at issue").

To satisfy the second element, plaintiff must show that his interest in First Amendment expression outweighs his employer's interest in efficient operation of the workplace. When considering these interests, the court evaluates the weight to be given the public concern addressed by plaintiff's speech when balanced against the employer's interests.  Id. at 355. Inasmuch as plaintiff has not provided factual allegations describing the contents of his statements, the court is unable to determine whether his statements addressed a public concern, much less what weight the public concern should be afforded when balanced against his employer's interests.  Thus, plaintiff has failed to allege facts sufficient to satisfy the second element.

26

As to the third element, plaintiff must establish that he was deprived of some valuable benefit.  Plaintiff has sufficiently alleged facts to satisfy this element by claiming that he lost his employment.

The fourth element requires that plaintiff demonstrate a causal relationship between his protected expression on matters of public concern and the loss of a valuable benefit.  Plaintiff has not pled the necessary facts to establish "that the substance of his protected speech was a substantial factor" behind his termination or that the articulated justifications for his termination were a pretext.  Id. at 358.  As noted with regard to the first and second elements, plaintiff has not provided any factual allegations conveying the substance of his statements or the timing of his statements as relevant to the timing of his termination.  Without this, the facts as alleged cannot establish a causal relationship between his protected expression and the loss of his employment.

Of the four elements necessary to establish a First Amendment retaliation claim, the facts as pled by plaintiff satisfy only one of the requisite elements.  Thus, there is insufficient factual matter to determine whether he has pled a claim for relief that is plausible on its face.  Accordingly,

27

defendants' motion to dismiss as to Count III is granted and plaintiff's section 1983 claim is dismissed without prejudice.


                              V.


        Based on the foregoing, it is ORDERED that the defendants' motion to dismiss be, and hereby is, granted and this action is dismissed without prejudice.

        The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

                        DATED: July 21, 2010


                        John T. Copenhaver, Jr.
                        United States District Judge

28